UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ASSMA GROUP, LLC, ET AL.,**

    Plaintiffs,

v.

                                   **No. 4:26-cv-0572-P**

**MT. HAWLEY INSURANCE
COMPANY, ET AL.,**

    Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Mt. Hawley Insurance Company's ("Mt. Hawley") Motion to Transfer Venue. ECF No. 3. Having reviewed the Motion, relevant docket filings, and applicable law, the Court finds that the lawsuit is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1404(a).

## BACKGROUND

This case arises out of a commercial insurance dispute between Assma Group, LLC ("Assma") and Mt. Hawley concerning Mt. Hawley's coverage of Assma's commercial property ("the Property"). ECF No. 1–3 at 2. Assma contends that the Property's roof was damaged in a windstorm and hail event. *Id.* Assma also alleges that Mt. Hawley breached their insurance policy ("the Policy") by failing to pay Assma's claim. *Id.* at 5. The amount in controversy includes $125,914.72 in replacement costs plus statutory penalties, interest, attorney's fees, and exemplary damages. ECF No. 6 at 1. Assma timely filed the case in state court and Mt. Hawley removed the case to this Court on May 11, 2025. ECF No. 3 at 4.

On or around May 27, 2024, a thunderstorm with hail and damaging winds struck the Arlington area. ECF 6 at 2. Assma claims this storm

caused hail and wind damage to the Property, including to the roof and air conditioning systems. *Id.* Assma promptly reported the loss, and Mt. Hawley received the Property Loss Notice on or about June 6, 2024. *Id.* Assma asked Mt. Hawley to cover the cost of repairs to the Property, pursuant to the Policy. ECF No. 1-3 at 3.

On or about June 12, 2024, Mt. Hawley's independent adjuster, Jeff Morlen of Engle Martin & Associates, inspected the Property. ECF No. 6 at 3. Morlen observed and documented circular hail impacts to gutters, downspouts, and roof surfaces, as well as water damage to approximately 20 interior ceiling tiles, some of which exhibited staining consistent with recent leakage. *Id.* Mt. Hawley retained Unified Building Sciences & Engineering ("UBSE"), which conducted an inspection on July 17, 2024. The UBSE report concluded that hail during the May 27, 2024, storm did not reduce the functionality or service life of the air conditioning system and that the roof was not damaged by hail or wind. *Id.* Additionally the report claimed that the interior staining resulted from maintenance or condensation rather than the storm. *Id.*

On August 1, 2024, Defendant issued a partial denial letter, asserting that the covered loss did not exceed the policy deductible. *Id.* at 4. On January 7, 2025, Assma retained public adjuster Steve Jenkins, who disputed the reliability of the UBSE report and provided an estimate that comprehensively scoped a full roof system replacement, HVAC repairs or replacement, interior repairs, and debris removal. ECF No. 1–3 at 4. Mt. Hawley responded to Jenkins via email, requesting the estimate, labeled photographs, and an expert report on Jenkin's findings. ECF No. 6 at 4. Communications then ceased between parties. *Id.*

Plaintiff now sues Defendant for breach of contract, violation of the Texas Insurance Code, unfair settlement practices, and violations of the Texas Deceptive Trade Practices Act. *Id.* at 7–10. Mt. Hawley filed this Motion to Transfer Venue to the Southern District of New York ("Motion") on May 29, 2026. ECF No. 13. Mt. Hawley argues that the Policy's Forum Selection Clause should be enforced because it is valid, enforceable, mandatory, and pursuant to both 28 U.S.C. § 1404(a) and

2

the holding of *Atlantic Marine Construction Company v. U.S. District Court for Western District of Texas*, 571 U.S. 49, 62 (2013). *Id.* at 12.

Assma opposes the transfer, claiming the forum selection clause is invalid under the seminal case of *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) and the clause is ambiguous enough to defeat enforceability. ECF No. 16 at 3. Plaintiff cites the Policy's mandatory Texas surplus disclosure, arguing that it contradicts the forum selection clause, making it ambiguous. *Id.* at 6–7. Additionally, Assma argues that the lack of New York nexus makes the clause unreasonable. *Id.* Additionally, Plaintiff argues that even if the clause was valid, it would still fail to be enforceable due to public interest weighing against transfer. *Id.* The policy's ("Policy") forum selection clause states:

> It is agreed of any litigation involving any matter arising out of or related to this Policy, it is agreed that the "Insured" shall submit to the jurisdiction of New York state and New York federal courts, and shall comply with all the requirements necessary to give such courts jurisdiction. Any litigation initiated by any "Insured" against the Company shall be brought only in the state or federal courts of New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to remove an action to a United States District Court in that state.

> All matters arising from or relating to this Policy, including, without limitation, its procurement, formation and issuance and all matters related to the validity, interpretation, performance and enforcement of this Policy or any part of it shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

ECF No. 13 at 12.

Based on these clauses, Mt. Hawley filed the Motion before the Court, which seeks to transfer the case to the Southern District of New York. The Court now addresses the Motion.

3

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). When considering a motion to transfer venue, a district court must consider several private and public interest factors "none [of which] can be said to be of dispositive weight." *Id.* at 315. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *Id.* The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.*

However, the Supreme Court in *Atlantic Marine* explained that the existence of a forum selection clause "dramatically alters" this analysis in two ways. *Atl. Marine Const. Co.*, 571 U.S. at 51. "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 63. Second, the "district court may consider arguments about public-interest factors only," because the private-interest factors "weigh entirely in favor of the preselected forum." *Id.* at 64. A valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 59–60.

## ANALYSIS

As the Fifth Circuit recognized in *Weber*, "the question of enforceability is analytically distinct from the issue of interpretation: Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). Accordingly, this analysis proceeds in four parts. First, the Court determines whether the clause is mandatory or permissive. Second, the Court addresses whether the clause is valid. Third, the Court

determines whether the clause is enforceable. Last, the Court will determine whether the public interest factors favor transfer of the case. The Court will address each in turn.

### 1. The Forum-Selection Clause is Mandatory.

Assma in passing suggests that the clause is not mandatory but provides no analysis contesting its mandatoriness. ECF No. 16 at 1. Nonetheless, the Court conducts its analysis. A federal court sitting in diversity should use the parties' choice of law to determine whether a forum-selection provision is mandatory or permissive. *See Weber*, 811 F.3d at 770–71. Here, the Agreement contains a New York choice-of-law clause, and neither party contests that New York Law applies. *See* ECF No. 16 at 3. Accordingly, the Court looks to New York Law to determine whether the forum-selection clause is permissive or mandatory.

New York courts deem a forum-selection clause mandatory if it is "unambiguous" and "provide[s] that the specified forum is the exclusive or sole forum in which the matter may be heard...." *Walker, Truesdell, & Roth Assoc., Inc. v. Globeop Fin. Servs.,* LLC, No.600469/09, slip op. at 5 (N.Y. Sup. Ct. 2013). Ambiguity, according to New York law, is evident if language "on its face is reasonably susceptible to more than one meaning." *Greenfield v. Philles Record*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (Ct. App. 2002). Again, the forum-selection clause provides:

> It is agreed of any litigation involving any matter arising out of or related to this Policy, it is agreed that the "Insured" shall submit to the jurisdiction of New York state and New York federal courts, and shall comply with all the requirements necessary to give such courts jurisdiction. Any litigation initiated by any "Insured" against the Company shall be brought only in the state or federal courts of New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to remove an action to a United States District Court in that state.

> All matters arising from or relating to this Policy, including, without limitation, its procurement, formation and issuance and all matters related to the validity, interpretation, performance and enforcement of this Policy or any part of it shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

ECF No. 13 at 12.

The Court finds this language is unambiguous on its face. Combined with the fact that neither Party contests this, the Court finds that the forum-selection clause is mandatory.

### 2. The Forum-Selection Clause is Valid.

While Plaintiff conceded the Policy was "valid, binding, and enforceable" in its Amended Complaint, Plaintiff argues that it is invalid under the standards set forth in *Bremen. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1972); ECF No. 6 at 7. As the Supreme Court has emphasized, there is a "prima facie" presumption of validity for forum-selection clauses. *See Bremen* at 10. This presumption may be overcome by a clear showing that a forum-selection clause is (1) unreasonable under circumstances, (2) has fraud or overreaching, or (3) violates public policy". *See Id.* at 6 and 15. And here, Plaintiffs do not argue the clause contained fraud or overreaching.

First, Plaintiff argues that the clauses violate the reasonableness requirement in *Bremen* and are contrary to public policy because the parties would evade Texas statues. ECF No. 16 at 8. The Court finds that *Bremen* does not specifically require the parties have a nexus in the forum for the clause to be reasonable. *See Bremen*. Moreover, there is nothing unreasonable about enforcing a forum selection clause which was freely negotiated and agreed to, despite the parties not having a nexus in the designated forum state. *See Id.* at 12–13. This factor favors validity.

Next, Plaintiff also argues that the forum selection clause is invalid because it contravenes Texas public policy through evading Texas statutes and regulation by transferring the forum to New York. The

Court agrees with the decision in *Noble House* which concluded that forum selection clauses are not inconsistent with Texas public policy. *Noble House, L.L.C. v. Certain Underwriters at Lloyd's*, London, 67 F.4th 243, 252 (5th Cir. 2023). The Court also acknowledges that Chapter 225 applies only to surplus lines policies, not the policies' insurers. *See* Tex. Ins. Code ann. § 225.002. This factor favors validity.

Because Plaintiff fails to overcome the strong presumption of validity under any of the three factors, the forum-selection clause is valid.

### 3. The Forum-Selection Clause is Enforceable.

Having determined that the forum-selection clause is mandatory and valid, the Court now turns to consider whether it is enforceable. As the Fifth Circuit has repeatedly emphasized, there is a "strong presumption" in favor of enforcing mandatory forum-selection clauses. *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018); *see also Weber*, 811 F.3d at 773." This presumption may be overcome by a clear showing that a forum-selection clause is unreasonable under one of the following circumstances: (1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state." *Al Copeland*, 884 F.3d at 543 (cleaned up). Here, all four factors favor enforcement.

First, Plaintiff does not allege, nor is there any evidence, that the forum-selection clause was a product of fraud or overreaching. Thus, this factor weighs in favor of enforcement.

Second, Plaintiff does not allege that litigating in New York, would be so gravely inconvenient or unfair as to effectively deprive it of its day in court. This factor therefore also weighs in favor of enforcement.

The third factor is similar to the second: Plaintiff does not demonstrate the application of the chosen law would be fundamentally unfair or would deprive it of a remedy. This factor favors enforcement.

7

Fourth, enforcement of the Policy's forum-selection clause does not contravene any strong public policy of the forum state. Texas courts recognize a strong public policy favoring enforcement of forum-selection clauses. *See SH Salon L.L.C. v. Midtown Mkt. Missouri City, TX, L.L.C.*, 632 S.W.3d 655, 659 (Tex. App.—Houston 2021, no pet.) (determining that forum-selection clauses are presumptively enforceable). The Court acknowledges Plaintiff's argument regarding Texas' regulatory scheme for surplus lines insurance and its interest in protecting Texas policyholders. However, the Court agrees with the decision in *Noble House* which concluded that forum selection clauses are not inconsistent with the provisions of the Texas Insurance Code, and thus, are not inconsistent with Texas public policy. *See Noble House* F.4th at 252. Additionally, the Court acknowledges that Chapter 225 applies only to surplus lines policies, not the policies' insurers. *See* Tex. Ins. Code Ann. § 225.002. This factor favors enforcement.

Because Plaintiff fails to overcome the strong presumption of enforceability under any of the four factors, the forum-selection clause must be enforced according to its plain terms.

### 4. The Public-Interest Factors Favor Dismissal.

Because the forum-selection clause is valid, mandatory, and enforceable, the *Atlantic Marine* framework dictates that the private-interest factors "strongly favor dismissal." *Weber*, 811 F.3d at 775. At this stage, the Court's analysis turns to the question of whether this is one of the "rare cases in which the public-interest factors favor keeping a case" despite the presence of a mandatory and enforceable forum-selection clause. *Id.* at 775–76. Ultimately, the Court must determine whether the public-interest factors "so greatly outweigh the private-interest factors as to justify retaining the case in the United States despite the Parties' agreement." *Id.* at 776.

In this case, the relevant public interest factors include the following: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of

8

foreign law. *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 830—31 (N.D. Tex. 2013) (Boyle, J.). The Court addresses each factor in turn.

First, the Court considers its own congestion. The Northern District of Texas has one of the busiest dockets in the entire country. *See Chamber of Com. of the U.S. v. CFPB*, 735 F. Supp. 3d 731 (N.D. Tex. 2024) (Pittman, J.) (pointing out that the Northern District of Texas has a busier docket than the District Court for the District of Columbia). Indeed, as of June 30, 2025, the Northern District of Texas, had 522 pending cases per judgeship and 6,259 pending actions total. *See Perez v. Genoptix, Inc.*, No. 4:19-cv-00309-O, 2018 WL 11435300, at *3 (N.D. Tex. Nov. 6, 2018) (O'Connor, J.) (stating that to assess relative court congestion between districts, courts may analyze federal judicial caseload statistics when determining whether to transfer). And within the Northern District of Texas, the Fort Worth division is the busiest—two to three times busier than even the large docket managed by the Dallas Division. *See Outsourcing Facilities Ass'n v. United States Food & Drug Admin.*, No. 4:24-cv-00953-P, 2025 WL 1782574, at 1 (N.D. Tex. Mar. 26, 2025) (Pittman, J.) (cleaned up). As for the Southern District of New York's congestion, the Court does not find its 591pending cases substantially more burdensome than our docket. Moreover, this case is still in its early stages, and the New York Court will not have to redo work already done by this Court. Therefore, there is little concern over administrative difficulties flowing from court congestion. Accordingly, the Court finds this factor favors dismissal.

Second, the Court considers the local interest in deciding localized disputes. Here, there is a colorable argument that Texas citizens and Courts have a local interest in adjudicating disputes between Parties who do business in the state. Nonetheless, that interest cannot overcome the Parties' contractual choice of forum. Thus, this factor is neutral.

Third, as the Court has already noted, this case will be governed by New York law as a result of the Agreement's choice of law provision. Naturally, a New York Court will be intimately familiar with New York law. This factor favors dismissal.

9

The fourth factor is similar to the third: The Court does not foresee any conflict of law issues. Accordingly, the fourth public-interest factor favors dismissal.

Because only the third factor is neutral, and the rest support dismissal, the public-interest factors on balance favor enforcing the forum-selection clause. The Court therefore finds that transferring the lawsuit, is appropriate. *See JTH Tax, LLC v. Cortorreal*, No. 4:23-CV-0173-P, 2023 WL 4673278, at 2 (N.D. Tex. July 20, 2023) (Pittman, J.).

### 5. Local Rule 62.2

Lastly, the Court determines that a stay of transfer would disrupt a just and expeditious resolution of this case. In September 2024, the Northern District of Texas updated its Local Rules to require a 21-day stay following any contested transfer order outside of the Fifth Circuit. N.D. Tex. L.R. 62.2. But under Local Rule 83.1, and "[n]otwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." N.D. Tex. L.R. 83.1. An additional 21 days—for a transfer order that does nothing more than enforce a straightforward forum selection clause—is not necessary or just.

The Court questions the legitimacy and practicality of Local Rule 62.2 (the "Rule"). In terms of legitimacy, the ostensible reason behind the Rule is to allow the de facto appellate review of a district court's decision to transfer a case to another circuit. But jurisdiction of federal courts to exercise appellate review is established by Congress and the United States Supreme Court—not the district courts through local rules.[1] The current venue statutes, 28 U.S.C. §§ 1391, 1404(a), 1406, and

---

[1] The judiciary must tread carefully to respect the separation of powers and avoid encroaching on powers belonging to Congress. As George Washington warned in his famous farewell address:

> The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism... Let there be no change by usurpation; for though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed."

1631 say nothing related to a district court needing to stay a case following a transfer order to another district, for any amount of time. In fact, 1404(a) is so broad that it allows transfer to "*any other district or division* where it might have been brought." 28 U.S.C. 1404(a) (emphasis added). And courts have long enjoyed "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). While the venue statutes have been enacted for decades, and Congress has had ample opportunity to amend them, the Rule seemingly circumvents that process with a substantive rather than procedural revision.

As for practicality, the Rule forces district court judges to prioritize certain filings over others. For example, if a motion for preliminary injunction and motion to transfer are filed at the same time, a judge may be forced to rule on the preliminary injunction given the 21-day waiting period the parties must endure—notwithstanding a clearly improper venue. And although the Court resorts to Local Rule 83.1 in this Order to avert the 21-day stay for the Parties' interests, it is clear that Local Rule 83.1 and the Rule are inconsistent. Moreover, the Rule necessarily infringes on a district court's charge to manage its own docket. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

## CONCLUSION

Having considered the valid, mandatory, and enforceable nature of the forum-selection clause and the relevant public-interest factors, the Court finds that the lawsuit is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York.

**SO ORDERED** on this **25th day of June 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

*George Washington, Farewell Address* (Sept. 19, 1796), *in* 35 THE WRITINGS OF GEORGE WASHINGTON 228–29 (John C. Fitzpatrick ed., 1940).